COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MARK ANTHONY LUJAN, | | No. 08-09-00250-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20030D01615) |
| | § | |
| | § | |

**O P I N I O N**

Mark Anthony Lujan appeals the district court's order revoking community supervision and adjudicating him guilty of possession of marijuana, greater than fifty but less than or equal to two thousand pounds. On appeal, Appellant complains that the district court lacked jurisdiction to adjudicate his guilt, that it erred in refusing to allow any witnesses to testify on his behalf at the punishment phase, and that its failure to enter findings of fact and conclusions of law requires reversal. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Pursuant to a plea agreement, Appellant entered a guilty plea before the 34th District Impact Court of El Paso County, Texas, to the second-degree felony offense of possession of marijuana, greater than fifty but less than or equal to two thousand pounds. The court assessed punishment at community supervision for a term of ten years and a $2,000 fine, but deferred further proceedings

without entering an adjudication of guilt. In December 2003, the State filed a motion to revoke community supervision and adjudicate guilt. In an amended motion to adjudicate guilt, the State alleged that Appellant committed murder in November 2003 in New Mexico, as well as other acts which violated the conditions of his community supervision. Appellant responded by filing a motion to quash and a motion to dismiss. The presiding judge of Criminal District Court No. 1 of El Paso County conducted a hearing in June 2009. At that point, the State abandoned all allegations except for the allegation that Appellant committed murder during his community supervision period. Appellant pled true to the allegation. The district court entered judgment adjudicating guilt and sentenced Appellant to twenty years' incarceration. Appellant then requested findings of fact and conclusions of law and filed a motion for new trial. Although the court held a hearing on the motion for new trial, it did not enter an order and the motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (b), (c). This appeal follows.

## JURISDICTION

We begin with Issue Two, because whether the court below had jurisdiction over the controversy is a threshold question. *See State v. Roberts*, 940 S.W.2d 655, 657 n.2 (Tex.Crim.App. 1996). Appellant contends that Criminal District Court No. 1 lacked jurisdiction because the underlying criminal prosecution occurred in the 34th District Impact Court. Article 42.12, Section 5(b), of the Code of Criminal Procedure authorizes a trial court to revoke a defendant's deferred adjudication community supervision and adjudicate his guilt on the original charge if the State proved by a preponderance of the evidence that the defendant violated any condition of his community supervision. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 5(b)(Vernon Supp. 2010); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006). Section 10(a) of this article provides in part:

"Only the court in which the defendant was tried may grant community supervision, impose conditions, revoke the community supervision, or discharge the defendant, unless the judge has transferred jurisdiction of the case to another court with the latter's consent." TEX.CODE CRIM.PROC.ANN. art. 42.12, § 10(a)(Vernon Supp. 2010).

Appellant argues that the Impact Court never transferred his case to Criminal District Court No. 1, and that there were no agreements between the courts to exchange benches. In the absence of evidence demonstrating that the cases from the Impact Court were transferred to Criminal District Court No. 1, he continues, the latter court lacked jurisdiction to adjudicate his guilt.

Under the Texas Government Code, district court judges in multi-court counties may transfer any civil or criminal matters on their docket to another district court in the same county, and the judges may exchange benches or districts at their discretion, from time to time. TEX.GOV'T CODE ANN. § 24.303(a)(Vernon 2004); *see Davila v. State*, 651 S.W.2d 797, 799 (Tex.Crim.App. 1983). It is unnecessary that a formal order be entered for the judge of one district court to preside over a case in place of a duly elected judge. *Davila*, 651 S.W.2d at 799.

The facts here are a bit more complicated. We first explain the creation of Criminal District Court No. 1, as was recited on the record by the trial judge below:

> [Q]uite a few years ago the El Paso Council of Judges established an Impact Court[1] to handle primarily drug cases. . . . And then about a year and a half ago the legislature created a new district court in El Paso called the El Paso County Criminal District Court No. 1, which is what we are right now. And it's my understanding that the El Paso County Council of Judges at that time decided to cease having an Impact Court and have all those cases transferred to this court, the Criminal District Court No. 1. And so there is no longer any Impact Court.

---

[1] The 34th District Impact Court served under the auspices of the 34th District Court. At the discretion of the presiding judge of the El Paso Council of Judges, the Impact Court has also rotated to the 168th District Court and the 384th District Court.

Because the Impact Court was not legislatively created, the presiding judge was not an elected official. Instead, a visiting or retired judge would be assigned by the Regional Presiding Judge for the Sixth District, who is Judge Steve Ables from Kerrville.[2] Compounding the confusion is that the duly elected judge of Criminal District Court No. 1 has been removed from office because of a criminal conviction in federal court. Judge Ables then appointed the Honorable Peter S. Peca, Jr. to serve as the presiding judge until the next election. Judge Peca is a seasoned and respected jurist having served as the presiding judge of the 171st District Court and County Court at Law No. 7, both of which are elected positions.

Appellant entered his guilty plea in the Impact Court, which subsequently imposed community supervision on him and deferred further proceedings without entering an adjudication of guilt. After the State filed its amended motion to adjudicate guilt on October 20, 2008, all subsequent pleadings were filed in the Criminal District Court No. 1 which eventually adjudicated Appellant guilty and sentenced him to twenty years' incarceration. We conclude that Judge Peca was not precluded from revoking Appellant's community supervision and that Criminal District Court No. 1 had jurisdiction to adjudicate Appellant's guilt. *See* TEX.GOV'T CODE ANN. § 24.303(a). Accordingly, we overrule Issue Two.

## DENIAL OF DUE PROCESS

In the first part of Issue One, Appellant complains that Judge Peca erred in failing to allow him the opportunity to have witnesses testify on his behalf in mitigation of the punishment. He contends that the error constitutes a violation of the Due Process Clause of the Fourteenth

---

[2] Texas boasts nine administrative regional districts. The presiding judge of each district is appointed by the Governor to serve a four-year term.

Amendment of the United States Constitution, art. 1, Section 10 of the Texas Constitution, and art.

42.12, § 5(b) of the Texas Code of Criminal Procedure.

## The State of the Record

At the beginning of the revocation proceeding, defense counsel urged an oral motion for

continuance to secure witnesses from New Mexico to testify in mitigation of punishment.  He then

advised Judge Peca that he did have one witness present in the hallway:

> Counsel: Mr. Lujan does have witnesses on the punishment stage of the proceeding.  And that we would have at least --
>
> The Court: What does that person going to be -- what are they going to be testifying to?
>
> Counsel: They're going to be testifying as to his character.  One, the person's going to be testifying -- he's going to be testifying that he's going to be on parole in New Mexico and that he has a job.  That he's going to be working.  He's going to be complying with parole requirements.  That he's not a flight risk.  That he would not be leaving.  That he did his time five and a half years where he did not have any problems in the prison system.  So that this person -- so that this Court can actually look at the proper punishment in this case, and we're asking that he's -- his probation be reinstated so that he can complete his probation.

After Appellant entered his plea, the court inquired as to the availability of witnesses:

> The Court: Do you have witnesses here?
>
> Counsel: I have one person that came in, Judge.  And, again, we'll ask the Court to postpone the punishment to get all our witnesses here.
>
> The Court: No.  Do you have a witness here today?
>
> Counsel: Yeah, I have a witness.

Judge Peca found the allegations in the motion to revoke to be true and adjudicated Appellant guilty of the underlying offense of possession. He then announced that he was, "going to proceed with the question of punishment." The State called one witness, the uncle of the New Mexico murder victim, who testified over Appellant's repeated objection. At the end of the testimony, the witness was excused, and the following occurred:

> All right. At this time the Court is going to go ahead and I'm going to overrule your motion for a continuance on this matter.
>
> The Court's of the opinion it doesn't want to hear any more evidence of this case and the Court's going to go ahead and pronounce sentence. And I'm going to sentence Mr. Lujan to 20 years with credit for time served. That'll be it. The Court's in recess.

It appears from the record that Judge Peca left the bench quickly. Appellant argues that he did not have time to object. While the judge was leaving the courtroom, the prosecutor asked if the victim's mother could give a victim impact statement, to which Judge Peca replied, "No. This is not a murder trial." Defense counsel, apparently simultaneously, added, "We would object to that, Judge."

The State maintains that Appellant has waived error because he did not specifically ask at the "punishment phase" to call the one witness who was present, nor did he object to the trial court's hasty adjournment. Ordinarily we would agree. But the reporter's record from the hearing on Appellant's motion for new trial reveals much more about the circumstances of the revocation hearing. Defense counsel reminded the court that one witness who was present had not been allowed to testify and he then urged Judge Peca to reconsider the twenty year sentence. Judge Peca responded:

> The Court:    The -- the Court felt it was being abused at that time because the case had been set for a long time for that hearing. We came in here for the hearing. The defendant then said they

wanted to have a continuance to bring witnesses in. The State was opposing the continuance because they had already brought witnesses in from out of town, and so I decided to deny that motion for continuance and proceed with the hearing.

Then into the hearing, the Court finds that the witnesses the State has brought in from who knows where really don't have any information that's relevant to the Court on this particular matter. So at that point in time, and based on the position where the defendant has already pled true, the Court's going to find the allegations to be true. It's pretty obvious they are true. He's been in New Mexico. He's got over five years credit that the Court's going to give him, and the Court did hear your proffer then and heard your proffer now.

\* \* \* \* \*

Mr. Fernandez-Gonzalez, I considered everything you said. I assumed that those witnesses were going to come here and say exactly what you said, and the Court's in the position of, what's the proper sentence in this particular case?

\* \* \* \* \*

And it turns out that he's already done enough time that he's already eligible for parole in Texas on this case. All right. So I'm expecting he's just going to go down there and get paroled.

Counsel again suggested that the defense witnesses might change the court's opinion:

Counsel: I'm telling the Court that these people will be testify [sic] as to his good character. They've known him since youth, since he was a young person. And that the Court might have a change of opinion at that point. That's all I'm asking that those witnesses be allowed to testify. And once they testify, if you still feel the same way, that it's 20 years, well, there's nothing we can do there.

The Court: Do you have them here today?

Counsel: No, Judge. I mean, I'm not trying to guess what you're going

> to do. I'm asking for a new trial and if you grant a new trial, just give me enough time so I can either subpoena those witnesses or ask them to come in voluntarily. My understanding is that they will come in and testify on his good character.

As we have noted, Judge Peca took the motion for new trial under advisement but did not sign a written order. Consequently, the motion was overruled by operation of law.

## Analysis of *Issa* and Its Progeny

On appeal, Appellant does not challenge the denial of his motion for continuance or his motion for new trial. Instead, he complains that he was deprived of due process when the court adjourned the punishment phase of the revocation hearing without allowing him to call his witness in mitigation of punishment. He directs our attention to *Issa v. State*, 826 S.W.2d 159 (Tex.Crim.App. 1992), and rightly so. There, the defendant complained that the judge who presided at the revocation proceeding erred by immediately sentencing him without allowing any opportunity to be heard on the issue of punishment. Defense counsel did not immediately object but later complained in a motion for new trial that the trial judge immediately left the bench without giving him the opportunity to object. Relying upon *Duhart v. State*[3], the Court of Criminal Appeals held "that when a trial court finds that an accused has committed a violation as alleged by the State and adjudicates a previously deferred finding of guilt, the court must then conduct a second phase to determine punishment." *Issa*, 826 S.W.2d at 161. Recognizing that in most circumstances, the failure to object would waive error, the court determined that the defendant had no opportunity to object until after the court pronounced sentencing, recessed the court, and left the bench. Consequently, by timely filing a motion for new trial specifically raising the issue, error was

---

[3] 668 S.W.2d 384, 387 (Tex.Crim.App. 1984).

preserved. *Id*.

The high court revisited and distinguished *Issa* in *Pearson v. State*, 994 S.W.2d 176 (Tex.Crim.App. 1999). During the revocation proceeding, the trial court asked Pearson the following:

> Anything you want to tell about what I ought to do on the -- let's assume I revoke by virtue of the allegations, anything you want to offer on what the term may or may not be, should I continue you, some sort of alternative sanctions, if I do find the allegations to be true, what term should I consider? Anything you want to offer on that?

Pearson wanted to be restored to probation. The trial court revoked probation and imposed sentencing. Dissatisfied with the results, the defendant appealed, contending he was not offered a punishment hearing *after* the court ordered revocation. The Court of Criminal Appeals explained that *Issa* presented such a rare circumstance that error was preserved by raising it in a motion for new trial. For that reason, it was distinguishable:

> However, appellant in the instant case not only had the opportunity to, but did present punishment evidence. Appellant testified in his own behalf in regard to punishment, urging the trial court to continue his probation and suggesting that his probation be extended 'a couple of years.' It is immaterial that the opportunity to present evidence came before the actual words of adjudication. The failure of counsel to either obtain the attendance of the subpoenaed witnesses or to request a continuance to obtain their attendance based on the repeated rescheduling of the hearing is not dispositive. Appellant had the opportunity to present evidence during the proceedings. That is all that is required.

*Pearson*, 994 S.W.2d at 179; *see also Hardeman v. State*, 1 S.W.3d 689, 690-91 (Tex.Crim.App. 1999). Here, of course, Appellant sought a continuance which was denied by Judge Peca. The judge was also aware that Appellant had one witness present but recessed the hearing without allowing the witness to testify. For these reasons, the facts are surprisingly similar to those in *Issa* and necessitate a finding that the trial court erred. We turn now to a harm analysis.

Appellant duly filed a motion for new trial in which he complained of his inability to present evidence in mitigation of punishment. At the hearing, he admitted to the court that he had no witnesses present and asked the court to grant a new trial on the revocation so he could bring the witnesses in from New Mexico. He offered no explanation as to why the witnesses were not present at the hearing. He tendered no witness affidavits as to their expected testimony. He offered a vague reference that it is "[m]y understanding is that they will come in and testify on his good character."

To the extent he sought a new punishment hearing on yet another day, we conclude that the Court of Criminal Appeals has straightforwardly rejected this argument. In *Euler v. State*, 218 S.W.3d 88 (Tex.Crim.App. 2007), the defendant presented testimony at the revocation hearing concerning his neurologic condition.[4] After finding that the defendant had violated his probation, the court inquired whether he had anything to say before sentencing was imposed. Defense counsel responded by asking the trial court to postpone imposition of sentence until after the Christmas holidays, so that counsel would have time to gather evidence "as to some alternative" to the punishment assessed. The trial court denied the request. In his motion for new trial, Euler complained of the trial court's refusal "to postpone imposition of punishment . . . to give counsel the necessary time to prepare and present evidence that would dissuade the Court from ordering [appellant's] incarceration." *Euler*, 218 S.W.3d at 90. He also referenced his desire to present more extensive evidence concerning the nature and treatment of his neurological disorder. The trial court denied the motion for new trial and the court of appeals affirmed. The Court of Criminal Appeals

---

[4] Euler pled guilty to the offense of bribery pursuant to a plea bargain, and the trial court assessed his punishment at imprisonment for four years and a fine of $1,000. The trial court then suspended imposition of appellant's sentence and placed him on probation for four years, subject to certain conditions. One basis for the motion to revoke alleged Euler was driving while intoxicated. At the revocation hearing, he claimed he may have appeared intoxicated on the occasion in question because of a neurologic condition.

also affirmed, holding:

> Appellant's argument is, in effect, that his right to due process required the trial court to grant his request for another hearing on another day so that he could gather evidence and show that incarceration was not the appropriate punishment in his case. We are not persuaded by this argument, and we discern no error on the part of the trial court. If appellant wanted an opportunity to present evidence and argument on the question of punishment, it was incumbent upon him to ask for that opportunity and to be ready to present such evidence and argument as soon as the trial court announced its finding that he had violated the conditions of his probation. Part of being prepared for a revocation hearing is being prepared to present evidence and argument on the question of the proper disposition in the event that the trial court finds that the conditions of probation have been violated.

*Euler*, 218 S.W.3d at 91.

Although Appellant did not have the opportunity to call his lone witness at the punishment phase of the revocation proceeding, he certainly had the opportunity to have all of his witnesses testify at the hearing on the motion for new trial. Judge Peca specifically inquired whether the witnesses were available. Counsel responded that he sought a new punishment hearing on another day to secure the attendance of mitigation witnesses.

While Appellant has demonstrated *Issa* error, he has failed to establish that error was harmful. The trial court granted an evidentiary hearing on Appellant's motion for new trial. He offered neither evidence nor a reason why the witnesses were not in attendance. We thus conclude the error is harmless and affirm the judgment of the trial court.


January 12, 2011

                                          ANN CRAWFORD MCCLURE, Justice

Before McClure, J., Barajas, C.J. (Ret.), and Antcliff, Judge
Barajas, C.J. (Ret.)(Sitting by Assignment)
Antcliff, Judge (Sitting by Assignment)

(Publish)